# In the United States Court of Federal Claims

**OFFICE OF SPECIAL MASTERS**

Filed: October 27, 2026

| | | |
|---|---|---|
| JOSEPH DWECK, | * | |
| Petitioner, | * | No. 20-193V |
| v. | * | Special Master Young |
| SECRETARY OF HEALTH AND HUMAN SERVICES, | * | |
| Respondent. | * | |

*David John Carney*, Green & Schafle LLC, Philadelphia, PA, for Petitioner
*Naseem Kourosh*, United States Department of Justice, Washington, DC, for Respondent

**DECISION AWARDING INTERIM ATTORNEYS' FEES AND COSTS**[1]

On February 24, 2025, Joseph Dweck ("Petitioner") filed a motion for interim attorneys' fees and costs, requesting a total of $426,299.69 for the work of his counsel, David Carney. Pet'r's Motion for Interim Attorneys' Fees & Costs ("Pet'r's Mot.") at 14, ECF No. 70. This amount consists of $312,371.00 in fees and $113,928.69 in costs. *Id.* at 3–4. Petitioner did not incur any personal costs throughout the course of litigation. *Id.* at 3. On March 10, 2025, Respondent filed his response to Petitioner's motion. Resp't's Response, ECF No. 73. In his response, Respondent stated that he "defers to the Special Master . . . [regarding] whether the statutory requirements for an award of attorneys' fees and costs are met in this case," however, he requested several items be "scrutinize[d]" in Petitioner's fee application. *Id.* at 2, 5–10. Petitioner filed a reply on March 30, 2025, reiterating his arguments. Pet'r's Reply, ECF No. 78.

On August 18, 2026, I issued a Decision granting in part Petitioner's motion, awarding $318,811.15 in interim attorneys' fees and costs to Petitioner's counsel, Mr. Carney. ECF No. 82. On August 26, 2026, Petitioner filed a timely motion for reconsideration of my interim fees Decision, which I granted. Pet'r's Mot. Reconsideration, ECF No. 83; ECF No. 84. Respondent filed a response to Petitioner's motion on October 1, 2026. Resp't's Response Reconsideration,

[1] Because this Decision contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). This means the Decision will be available to anyone with access to the internet. In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

ECF No. 88. On October 19, 2026, Petitioner filed a reply. Pet'r's Reply Reconsideration. ECF No. 93. This superseding Decision results. Petitioner is now awarded interim attorneys' fees and costs in the amount of $391,344.80.

## I. Availability of Interim Attorneys' Fees and Costs

### A. Good Faith and Reasonable Basis

Under the Vaccine Act, petitioners may recover reasonable attorneys' fees and costs only if "the petition was brought in good faith and there was a reasonable basis for the claim for which the petition was brought." § 15(e)(1). Respondent does not object to Petitioner's motion on the basis of good faith or reasonable basis, and I find that the statutory criteria for an award of interim fees and costs are met.

### B. Justification for an Interim Award

In *Avera*, the Federal Circuit stated that a special master may award attorneys' fees and costs on an interim basis. *Avera v. Sec'y of Health & Hum. Servs*., 515 F.3d 1343, 1352 (Fed. Cir. 2008). The court noted that such awards "are particularly appropriate in cases where proceedings are protracted and costly experts must be retained." *Id.* Similarly, the Federal Circuit held in *Shaw* that it is proper for a special master to award interim attorneys' fees "[w]here the claimant establishes that the cost of litigation has imposed an undue hardship and that there exists a good faith basis for the claim." *Shaw v. Sec'y of Health & Hum. Servs*., 609 F.3d 1372, 1375 (Fed. Cir. 2010).

Many cases in the Program are proceeding slower than they have in the past. *See Miles v. Sec'y of Health & Hum. Servs*., No. 12-254V, 2017 WL 4875816 at *5 (Fed. Cl. Spec. Mstr. Oct. 4, 2017) ("[i]t may be months to years before an entitlement ruling is issued"); *Abbott v. Sec'y of Health & Hum. Servs*., No. 14-907V, 2016 WL 4151689, at *4 (Fed. Cl. Spec. Mstr. July 15, 2016) ("The delay in adjudication, to date, is due to a steady increase in the number of petitions filed each year.").

Petitioner's fees and costs have accumulated in the course of litigation. Petitioner submitted an itemization of attorney fees and a summary and documentation of costs. Petitioner's counsel requested a total of $426,299.69 in fees and expenses, and "[i]t cannot be seriously argued that in essence loaning cases thousands of dollars for years is not a hardship." *Kirk v. Sec'y of Health & Hum. Servs*., No. 08-241V, 2009 WL 775396, at *2 (Fed. Cl. Spec. Mstr. Mar. 13, 2009). Because of the protracted nature of the proceedings, I find an award of interim attorneys' fees and costs reasonable and appropriate for his work completed in this case.

## II. Reasonable Attorneys' Fees

The Vaccine Act permits an award of reasonable attorneys' fees and costs. § 15(e). The Federal Circuit has approved the lodestar approach to determine reasonable attorneys' fees and costs under the Vaccine Act. *Avera*, 515 F.3d at 1348. This is a two-step process. *Id.* First, a court determines an "initial estimate . . . by 'multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate.'" *Id.* at 1347–48 (quoting *Blum v. Stenson*, 465 U.S. 886, 888 (1984)). Second, the court may make an upward or downward departure from the initial

calculation of the fee award based on specific findings. *Id.* at 1348. A special master need not engage in a line-by-line analysis of petitioners' fee applications when reducing fees. *Broekelschen v. Sec'y of Health & Hum. Servs.*, 102 Fed. Cl. 719, 729 (2011). Furthermore, the special master may reduce a fee request *sua sponte*, apart from objections raised by Respondent and without providing the Petitioner notice and opportunity to respond. *See Sabella v. Sec'y of Health & Hum. Servs.*, 86 Fed. Cl. 201, 209 (2009).

"It is well established that an application for fees and costs must sufficiently detail and explain the time billed so that a special master may determine, from the application and the case file, whether the amount requested is reasonable." *Mostovoy v. Sec'y of Health & Hum. Servs.*, No. 02-10V, 2016 WL 720969, at *6 (Fed. Cl. Spec. Mstr. Feb. 4, 2016) (citing *Bell v. Sec'y of Health & Hum. Servs.*, 18 Cl. Ct. 751, 760 (1989)). It is "well within the special master's discretion" to determine the reasonableness of fees. *Saxton v. Sec'y of Health & Hum. Servs.*, 3 F.3d 1517, 1521–22 (Fed. Cir. 1993); *see also Hines v. Sec'y of Health & Hum. Servs.*, 22 Cl. Ct. 750, 753 (1991) ("[T]he reviewing court must grant the special master wide latitude in determining the reasonableness of both attorneys' fees and costs."). Applications for attorneys' fees must include contemporaneous and specific billing records that indicate the work performed and the number of hours spent on said work. *See Savin v. Sec'y of Health & Hum. Servs.*, 85 Fed. Cl. 313, 316–18 (2008). Such applications, however, should not include hours that are "excessive, redundant, or otherwise unnecessary." *Saxton*, 3 F.3d at 1521 (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)).

Reasonable hourly rates are determined by looking at the "prevailing market rate" in the relevant community. *See Blum*, 465 U.S. at 895. The "prevailing market rate" is akin to the rate "in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Id.* at 895 n.11. Petitioners bear the burden of providing adequate evidence to prove that the requested hourly rate is reasonable. *Id.*

### A. Hourly Rate

The decision in *McCulloch* provides a framework for consideration of appropriate ranges for attorneys' fees based upon the experience of the practicing attorney. *McCulloch v. Sec'y of Health & Hum. Servs.*, No. 09-293V, 2015 WL 5634323, at *19 (Fed. Cl. Spec. Mstr. Sept. 1, 2015), *mot. for recons. denied*, 2015 WL 6181910 (Fed. Cl. Spec. Mstr. Sept. 21, 2015). The Office of Special Masters has since updated the *McCulloch* rates, and the Attorneys' Forum Hourly Rate Fee Schedules from 2015 to 2026 can be accessed online.[2]

Petitioner requests the following hourly rates for the work of his counsel: for Mr. David Carney, $325.00 per hour for work performed in 2019, $350.00 per hour for work performed in 2020, $375.00 per hour for work performed in 2021, $400.00 per hour for work performed in 2022, $425.00 per hour for work performed in 2023, $450.00 per hour for work performed in 2024, and $475.00 per hour for work performed in 2025; for Ms. Anne Toale, $570.00 per hour for work performed in 2024, and $615.00 per hour for work performed in 2025; and for Ms. Danielle Strait, $480.00 per hour for work performed in 2024. Petitioner also requests rates between $145.00 and $205.00 per hour for work performed by his counsel's paralegals and law clerks between 2019 and 2025.

[2] The OSM Fee Schedules are available at: https://www.cfc.uscourts.gov/osm-attorneys-forum-hourly-rate-fee-schedules.

I find the rates requested for Petitioner's counsel and their paralegals and law clerks to be reasonable and in accordance with what these attorneys have previously been awarded for their Vaccine Program work. Accordingly, I will award these rates in full.

**B. Reasonable Number of Hours**

Attorneys' fees are awarded for the "number of hours reasonably expended on the litigation." *Avera*, 515 F.3d at 1348. Counsel should not include in their fee requests hours that are "excessive, redundant, or otherwise unnecessary." *Saxton*, 3 F.3d at 1521 (quoting *Hensley*, 461 U.S. at 434). It is well-established that billing for administrative or clerical tasks is not permitted in the Vaccine Program. *See, e.g.*, *Rochester v. United States*, 18 Cl. Ct. 379, 387 (1989) (stating that services that are "primarily of a secretarial and clerical nature . . . should be considered as normal overhead office costs included within the attorneys' fee rates"); *see also Isom v. Sec'y of Health & Hum. Servs.*, No. 94-770, 2001 WL 101459, at *2 (Fed. Cl. Spec. Mstr. Jan. 17, 2001) (agreeing with Respondent that tasks such as filing and photocopying are subsumed under overhead expenses); *Walters v. Sec'y of Health & Hum. Servs.*, No. 15-1380V, 2022 WL 1077311, at *5 (Fed. Cl. Spec. Mstr. Feb. 23, 2022) (failing to award fees for the review of CM/ECF notifications and the organization of the file); *McCulloch*, 2015 WL 5634323, at *26 (noting that clerical and secretarial tasks should not be billed at all, regardless of who performs them).

Upon review, I find that Petitioner's counsel mainly provided sufficiently detailed descriptions for the tasks performed. However, I find reductions necessary. First, several entries were billed for filing, updating internal file notes, and downloading files.[3] These constitute clerical and administrative tasks not permitted to be compensated in the Program. *See Rochester*, 18 Cl. Ct. at 387; *Walters*, 2022 WL 1077311, at *5. Further, most of these entries were included with other tasks. Because this constitutes block billing, it is impossible to discern how much time was spent on compensable versus noncompensable tasks.

A special master need not engage in a line-by-line analysis of a petitioner's fee application when reducing fees. *Broekelschen*, 102 Fed. Cl. at 729; *Fox*, 563 U.S. at 838 ("[T]he essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection. So trial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time."); *Hines v. Sec'y of Health & Hum. Servs.*, 22 Cl. Ct. 750, 753 (1991) ("[S]pecial master[s] [have] wide latitude in determining the reasonableness of both attorneys' fees and costs."); *Hocraffer v. Sec'y of Health & Hum. Servs.*, No. 99-533V, 2011 WL 3705153 (Fed. Cl. Spec. Mstr. July 25, 2011), *mot. for rev. denied*, 2011 WL 6292218, at *13 (Fed. Cl. 2011) (denying review of the special master's decision and endorsing "a global—rather than line-by-line—approach to determine the reasonable number of hours expended in this case"). Here, I find

[3] See, for example, entries dated 2/7/2020 ("received records, downloaded, audited for accuracy, and saved to file"), 5/1/2020 ("drafted and filed statement of completion"), 4/20/2021 ("reviewed NOA; marked file"), 6/8/2021 ("reviewed court order; calendared dates"), 1/10/2022 ("prepared and bates stamped exhibits 15-16; drafted NOF and filed exhibits"), 4/2/2022 ("[call] with client re case status, medical record update; made notes to file re next steps and case update"), 12/14/2023 ("reviewed informal communication notice, marked file"), 9/5/2024 ("reviewed respondent's updated CVs for experts; saved to file"), 9/27/2024 ("prepared and bates stamped exhibit 24; drafted NOF and filed exhibits"). Pet'r's Mot. at 16–55. This list is not exhaustive, nor does it need to be. A special master need not delve into each line of billing records. *Broekelschen*, 102 Fed. Cl. at 729; *Fox v. Vice*, 563 U.S. 826, 838 (2011) ("[T]rial courts need not, and indeed should not, become green-eyeshade accountants.").

an overall reduction of 5% to be appropriate. Mr. Carney has received general percentage reductions across all entries in the past for administrative tasks and block billing. *LaBine v. Sec'y of Health & Hum. Servs.*, No. 17-1443V, 2025 WL 2093352, at *4 (Fed. Cl. Spec. Mstr. June 30, 2025) (applying a 10% reduction to Mr. Carney's fees for administrative tasks and block billing); *Hagenswold v. Sec'y of Health & Hum. Servs.*, No. 20-320V, 2026 WL 1229809, at *5–6 (Fed. Cl. Spec. Mstr. Mar. 24, 2026) (applying a flat 10% reduction across total attorneys' fees for administrative tasks instead of imposing a reduction for each issue respectively). Applying a percentage reduction to the whole as opposed to each entry is appropriate here because there are numerous administrative tasks, all of which are block billed, and are on almost every page of counsel's invoice. This results in a reduction of $15,618.55.[4]

Second, Petitioner's counsel spent a significant amount of time preparing for the hearing in this case. Mr. Carney and his law clerks billed 156.6 hours, over the course of 24 days, for trial preparation before the two-day entitlement hearing. Pet'r's Mot. at 46–53. While 156.6 hours over a 24-day period (averaging 6.5 hours per day) seems to be excessive, it is reasonable, and expected, for counsel to spend time preparing to try their cases. However, Petitioner filed a 93-page pre-hearing brief which consisted of 44.8 hours[5] billed by Mr. Carney and 14.7 hours[6] billed by Ms. Toale. *Id.* at 42–43, 129–30. I find this excessive and a 93-page pre-hearing brief unnecessary. Counsel then billed 29.2 hours for drafting a 25-page pre-hearing reply brief. While a 25-page reply to Respondent's 31-page brief is excessive, I find that Petitioner's reply brief genuinely responded to the arguments raised in Respondent's brief and therefore I find this reasonable. Mr. Carney's fees have been reduced in the past for excessive time spent on briefing. *See LaBine*, 2025 WL 2093352, at *4 (post-hearing brief time cut in half). *Hagenswold*, 2026 WL 1229809, at *5–6 (reducing fees for excessive time spent on brief and discussing other cases with this behavior). In sum, I find a reduction of 10% for the hours spent on his pre-hearing brief to be appropriate, resulting in a reduction of $2,853.90.[7]

I find the remaining hours billed to be reasonable and will award them in full. Taking into account the above reductions, this results in an award of interim attorneys' fees totaling $293,898.55.[8]

### C. Costs

Similar to attorneys' fees, a request for reimbursement of costs must be reasonable. *Perreira v. Sec'y of Health & Hum. Servs.*, 27 Fed. Cl. 29, 34 (1992). Regarding expert fees, "[t]he question is not whether [the expert] expended the number of hours claimed, but whether it was necessary or reasonable for him to do so." *Baker v. Sec'y of Health & Hum. Servs.*, No. 99-653V, 2005 WL 6122529, at *4 (Fed. Cl. June 21, 2005) (quoting *Wasson v. Sec'y of Health & Hum. Servs.*, No. 90-208V, 1991 WL 135015, at *3 (Fed. Cl. Spec. Mstr. July 5, 1991), *remanded*, 24. Cl. Ct. 482, 483 (1991), *aff'd*, 988 F.2d 131 (Fed. Cir. 1993)). An expert retained by petitioners in the Vaccine Program will only be compensated at a reasonable hourly rate, and petitioners have

[4] $312,371.00 x .05 = $15,618.55.

[5] 4.4 hours on 9/15/2024, 6.5 hours on 9/17/2024, 6.3 hours on 9/18/2024, 3.8 hours on 9/19/2024, 6.3 hours on 9/20/2024, 4.5 hours on 9/26/2024, 3.4 hours on 9/27/2024, 1.4 hours on 9/28/2024, 3.1 hours on 9/28/2024, 3.7 hours on 9/30/2024, 1.4 hours on 10/1/2024.

[6] 4.5 hours on 9/18/2024, 2.0 hours on 10/1/2024, 7.4 hours on 10/1/2024, 0.8 hours on 11/21/2024.

[7] Mr. Carney: (44.8 hours x $450.00 = $20,160.00). Ms. Toale: (14.7 hours x $570.00 = $8,379.00). ($20,160.00 + $8,379.00) x .10 = $2,853.90.

[8] $312,371.00 – ($15,618.55 + $2,853.90) = $293,898.55.

the burden of demonstrating that the expert costs incurred were reasonable. *Smith v. Sec'y of Health & Hum. Servs.*, No. 18-0043V, 2020 WL 1243238, at *9 (Fed. Cl. Spec. Mstr. Feb. 20, 2020) (citing *Ceballos ex rel. Ceballos v. Sec'y of Health & Hum. Servs.*, No. 99-97V, 2004 WL 784910, at *13 (Fed. Cl. Spec. Mstr. Mar. 25, 2004)). When petitioners fail to substantiate a cost item, such as by not providing appropriate documentation to explain the basis for a particular cost, special masters have refrained from paying the cost at issue. *See, e.g.*, *Gardner-Cook v. Sec'y of Health & Hum. Servs.*, No. 99-480V, 2005 WL 6122520, at *4 (Fed. Cl. Spec. Mstr. June 30, 2005).

Petitioner requests a total of $113,928.69 in interim attorneys' costs. This amount is comprised of acquisition of medical records, the Court's filing fee, legal research costs, and payments to Petitioner's expert witnesses. Most of Petitioner's costs relating to postage and medical record acquisition are substantiated with supporting documentation, and thus I will award these costs in full. However, Ms. Toale and Ms. Strait billed for $707.44 of legal research, but do not provide invoices for these charges. Because these items are not substantiated, I will defer awarding these costs and allow Petitioner to provide supporting documentation in his final application for attorneys' fees and costs for me to consider. This results in a reduction of $707.44.

Petitioner requests a total of $28,000.00 in costs for 56 hours of work performed by Dr. Jeret at a rate of $500.00 per hour. Dr. Jeret has previously been awarded this rate in prior cases, and thus no reduction in his expert fee is necessary. *See Bryce v. Sec'y of Health & Hum. Servs.*, No. 17-1832V, 2023 WL 5666165 (Fed. Cl. Spec. Mstr. July 18, 2023). I will therefore award Dr. Jeret's fee in full.

Petitioner requests a total of $71,695.00 in costs for the services of Dr. Akbari. Dr. Akbari charged $500.00 per hour for 113.9 hours of work between 2021 and 2024, and $550.00 per hour for 35.9 hours of work in 2025. *See* Pet'r's Mot. at 120. Respondent challenged both Dr. Akbari's 2025 rate and overall number of hours billed, arguing that prior special masters have repeatedly declined to award Dr. Akbari's rate of $550.00 and have previously reduced his fees due to excessive time. Resp't's Response at 7–8. Petitioner did not address the number of hours Dr. Akbari billed in his reply but requested that his $550.00 per hour rate in 2025 be awarded due "to adjust for CPI data and his experience and assistance in the Vaccine Injury Compensation Program." Pet'r's Reply at 5.

Dr. Akbari has consistently been awarded $500.00 per hour for work done in the Program. See *Beckwith v. Sec'y of Health & Hum. Servs.*, No. 21-1660V, 2026 WL 2957775, at *6 (Fed. Cl. Spec. Mstr. Sept. 1, 2026); *Foukarakis v. Sec'y of Health & Hum. Servs.*, No. 20-1547V, 2024 WL 1156130, at *3 (Fed. Cl. Spec. Mstr. Feb. 22, 2024); *Bristow v. Sec'y of Health & Hum. Servs.*, No. 19-457V, 2022 WL 17821111, at *5–6 (Fed. Cl. Spec. Mstr. Nov. 15, 2022) (listing other cases in which Dr. Akbari has been awarded $500.00 per hour). And it has previously been determined that $550.00 per hour for Dr. Akbari's work "is excessive." *Foukarakis*, 2024 WL 1156130, at *3. I see no reason to deviate from what Dr. Akbari has previously been awarded. Accordingly, I will apply the $500.00 per hour rate across all the hours for work performed by Dr. Akbari in this case. This results in a reduction of $1,795.00.[9]

[9] ($550.00 – $500.00) x 35.9 hours = $1,795.00.

Although Respondent challenges the number of hours spent by Dr. Akbari in this case, I do not find a reduction of his hours warranted. The cases cited by Respondent involve more hours or different circumstances than those in the present case. Dr. Akbari spent 149.8 hours in the drafting of his three expert reports and for his preparation and participation in the two-day entitlement hearing. I find this to be reasonable and thus will not reduce the hours billed by Dr. Akbari.

However, a reduction is necessary for the quality of Dr. Akbari's work in this case. Here, as in past cases, Dr. Akbari asserted conclusions without providing supporting evidence. Indeed, Dr. Akbari has been warned repeatedly by special masters due to the overall lack of cohesiveness of his reports, the frequent mischaracterization of the literature he cites, and his habit of asserting scientific conclusions without providing any supporting evidence. *See, e.g.*, *Ampofo-Addo v. Sec'y of Health & Hum. Servs.*, No. 21-1231V, 2025 WL 2463643, at *19 (Fed. Cl. Spec. Mstr. July 31, 2025) (rejecting Dr. Akbari's theory for relying on conclusory statements, mischaracterizing medical literature, and lacking preponderant evidence); *Ray v. Sec'y of Health & Hum. Servs.*, No. 20-321V, 2025 WL 3900631, at *22–24 (Fed. Cl. Spec. Mstr. Dec. 12, 2025) ("Petitioner and her experts mischaracterize the medical literature to support their contentions. . . . Dr. Akbari mischaracterizes the findings, adversely affecting his credibility and reliability of his opinions. This critique of Dr. Akbari is not new.") (citing *Powell v. Sec'y of Health & Hum. Servs.*, No. 20-1726V, 2025 WL 3443590, at *32 (Fed. Cl. Spec. Mstr. Oct. 8, 2025) ("Dr. Akbari mischaracterizes the medical literature he cites which further adversely affects his credibility and the reliability of his opinions.")); *Williams v. Sec'y of Health & Hum. Servs.*, No. 19-1269V, 2024 WL 5040482, at *43 (Fed. Cl. Spec. Mstr. Nov. 13, 2024) (rejecting Dr. Akbari's theory because "(1) his proffered ideas about causation lack development, (2) he suggests the adoption of [a] legal standard other than preponderant evidence, and (3) he mischaracterizes the findings of medical articles."); *Nieves v. Sec'y of Health & Hum. Servs.*, No. 18-1602V, 2023 WL 3580148, at *44–45 (Fed. Cl. Spec. Mstr. May 22, 2023) (Dr. Akbari's "theory amounts to a confusing, inter-related patchwork of contentions . . . . There were also several erroneous foundational contentions in Dr. Akbari's opinion."); *M.M. v. Sec'y of Health & Hum. Servs.*, No. 18-583V, 2024 WL 4164557, at *37 (Fed. Cl. Spec. Mstr. Sept. 12, 2024) (Dr. Akbari "misrepresents the literature he cites. . . . Dr. Akbari's expert report, . . . is a meandering discussion of various topics that do not relate to how the flu vaccine can exacerbate asthma. It is difficult to understand and offers no cohesive theory that can be thoughtfully analyzed.").[10] Indeed, in my Entitlement Decision, I warned Petitioner that "[d]ue to this history of repeated behavior and his performance in the present case, Dr. Akbari's fees will be addressed accordingly." ECF No. 81 at 38 n.26. Accordingly, I find a 20% reduction necessary.[11] This results in an award of interim attorneys' costs totaling $97,446.25.[12]

## III. Conclusion

In accordance with the Vaccine Act, 42 U.S.C. § 300aa-15(e) (2018), I award Petitioner the following in interim attorneys' fees and costs:

| | |
|---|---|
| Interim Attorneys' Fees Requested | $312,371.00 |

[10] Due to this history of repeated behavior and his performance in the present case, Dr. Akbari's fees will be addressed accordingly.
[11] ($71,695.00 – $1,795.00) x .20 = $13,980.00.
[12] $113,928.69 – ($707.44 + $1,795.00 + $13,980.00) = $97,446.25.

| | |
|---|---|
| (Reduction) | -$18,472.45 |
| **Interim Attorneys' Fees Awarded** | **$293,898.55** |
| | |
| Interim Costs Requested | $113,928.69 |
| (Reduction) | -$16,482.44 |
| **Interim Costs Awarded** | **$97,446.25** |
| **Total Amount Awarded** | **$391,344.80** |

**Accordingly, I award a lump sum in the amount of $391,344.80, representing reimbursement for Petitioner's interim attorneys' fees and costs, to be paid through an ACH deposit to Petitioner's counsel's IOLTA account for prompt disbursement.**

In the absence of a motion for review filed pursuant to RCFC Appendix B, the Clerk of the Court SHALL ENTER JUDGMENT in accordance with the terms of the above decision.[13]

**IT IS SO ORDERED.**

s/Herbrina D. S. Young
Herbrina D. S. Young
Special Master

[13] Pursuant to Vaccine Rule 11(a), entry of judgment is expedited by the parties' joint filing of a notice renouncing the right to seek review.